UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHERRY J. RODRIGUEZ, ) | CASE NO. 1:14CV1623 |
| ) | |
| Plaintiff, ) | JUDGE DONALD C. NUGENT |
| ) | Magistrate Judge George J. Limbert |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN[1], ) | REPORT AND RECOMMENDATION |
| ACTING COMMISSIONER OF ) | OF MAGISTRATE JUDGE |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Sherry J. Rodriguez ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") and application for Supplemental Security Income ("SSI"). ECF Dkt. #1. Plaintiff asserts that the administrative law judge ("ALJ") erred in her decision because: she did not properly consider Plaintiff's lupus when determining whether Plaintiff met or equaled a listing; the ALJ's determination of Plaintiff's residual functional capacity ("RFC") is insufficient to accommodate Plaintiff's non-exertional limitations; and the ALJ failed to discuss or assign weight to the opinion of a state agency physician. ECF Dkt #13.

For the following reasons, the undersigned recommends that the Court REVERSE the ALJ's decision and REMAND the instant case for reconsideration and proper analysis of Plaintiff's impairments under Listing 14.02.

## I. PROCEDURAL AND FACTUAL HISTORY

Plaintiff filed applications for DIB and SSI on September 10, 2011 and December 3, 2012, respectively. ECF Dkt. #11 ("Tr.") at 136, 151. The Social Security Administration denied Plaintiff's applications initially and upon reconsideration. *Id.* at 86, 92. Plaintiff requested a hearing before an ALJ, which was held on January 3, 2013. *Id.* at 12.

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

On March 13, 2013, the ALJ denied Plaintiff's applications for DIB and SSI. Tr. at 9. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2014, and that Plaintiff had not engaged in substantial gainful activity since July 2, 2010. Tr. at 14. The ALJ determined that Plaintiff suffered from severe impairments, including lupus arthritis and/or inflammatory polyarthropathy and depressive disorder. *Id*. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id*. at 15. The ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with certain exceptions. *Id.* at 17. The ALJ also found that Plaintiff was unable to perform any past relevant work, but considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 23. Based on the above findings, the ALJ held that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 2, 2010 through the date of the decision. *Id.* at 24.

Plaintiff appealed the ALJ's decision to the Appeals Council, and the Appeals Council denied her request for review. Tr. at 1. The ALJ's decision therefore became the final decision of the Commissioner. On July 22, 2014, Plaintiff filed the instant suit seeking review. ECF Dkt. #1. On November 6, 2014, Plaintiff filed a brief on the merits. ECF Dkt. #13. On January 7, 2015, Defendant filed a brief on the merits. ECF Dkt. #15. Plaintiff filed a reply brief on February 3, 2015. ECF Dkt. #17.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

On March 13, 2013, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. at 15. The ALJ determined that Plaintiff's inflammatory arthritis did not fulfill the requirements of Listing 14.09 because there was no evidence of persistent inflammation or persistent deformity of: one or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively; one or more major peripheral joints with involvement of two or more organs or body systems where one or more of the organs or

-2-

body systems involved had at least a moderate level of severity and at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or weight loss). *Id.* The ALJ found that there was no evidence of ankylosing spondylitis or other spondyloarthropathies with ankylosis of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at forty-five degrees or more of flexion measured from the vertical position. *Id.* Continuing, the ALJ indicated that there was no evidence of anklyosis of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at thirty degrees or more of flexion measured from the vertical position, and involvement of two or more organs or body systems with one of the organs or body systems involved reaching a moderate level of severity. *Id.* Further, the ALJ stated that there was no evidence of repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs, and one of the following at the marked level: (1) limitation of activities of daily living; (2) limitation in maintaining social functioning; or (3) limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. *Id.* at 15-16.

The ALJ further opined that the severity of Plaintiff's medical impairments did not meet or medically equal the criteria of Listing 12.04 because Plaintiff could not satisfy the criteria of Listing 12.04(B) or 12.04(C). Tr. at 16. The ALJ found that Plaintiff had mild restriction in activities of daily living, primarily due to physical problems. *Id.* Describing Plaintiff's activities of daily living, the ALJ indicated that Plaintiff took care of her household with the help of family and had some difficulty dressing due to swelling, but was able to perform personal care, prepare small meals, do household chores, drive, and shop. *Id.* The ALJ opined that the above demonstrated that Plaintiff had mild limitations in activities of daily living. *Id.*

The ALJ determined that Plaintiff had mild difficulties in social functioning. *Id.* at 16. In making this determination, the ALJ stated that Plaintiff lived with family members and spent time talking with others and watching movies, but that she decreased her social activity due to pain and depression. *Id.* The ALJ indicated that during her testimony, Plaintiff stated that she did not have trouble being around groups of people. *Id.*

Regarding Plaintiff's concentration, persistence, and pace, the ALJ determined that Plaintiff had moderate difficulties. Tr. at 16. The ALJ indicated that Plaintiff had reported problems with her memory, and that she was able to handle finances, pay attention, and follow instructions. *Id.* The ALJ also noted that Plaintiff's ability to concentrate was good during her psychological consultative examination and she demonstrated adequate memory, but had trouble performing serial sevens. *Id.*

The ALJ stated that Plaintiff had experienced no episodes of decompensation that were of extended duration. Tr. at 16. The ALJ indicated that because Plaintiff's mental impairment did not cause at least two marked limitations, or one marked limitation and repeated episodes of decompensation, each of extended duration, the Listing 12.04(B) criteria were not satisfied. *Id.*

Continuing, the ALJ next looked to whether the Listing 12.04(C) criteria had been satisfied. The ALJ opined that Plaintiff had no medically documented history of an affective disorder with a duration of at least two years that had caused more than a minimal limitation on Plaintiff's ability to do work activities, or that otherwise satisfied the criteria to meet Listing 12.04(C). Tr. at 17.

The ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). Tr. at 17. The ALJ indicated that Plaintiff could: lift and carry ten pounds occasionally; stand and walk for two hours, and sit for six hours in an eight-hour workday; never kneel or crawl; and occasionally climb ramps and stairs, bend, balance, and stoop. *Id.* Continuing, the ALJ indicated that Plaintiff was limited to occasionally reaching overhead and frequently, handling, fingering, and feeling. *Id.* The ALJ also found that Plaintiff's mental impairments limited her to simple routine tasks with short instructions, and to working in an environment requiring only simple decisions and with few changes. *Id.*

The ALJ stated that after carefully considering the evidence, Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Tr. at 19. The ALJ indicated that she was not persuaded that Plaintiff's impairments had precluded her from all competitive work. *Id.* at 21.

When making a determination as to Plaintiff's RFC, the ALJ stated that she gave considerable weight to the Disability Determination Service ("DDS") physicians' assessments and RFC conclusions (the ALJ did not name the DDS physicians in her decision). Tr. at 22. Considerable weight was given to the findings of the consultative examiner, Mitchell Wax, Ph.D., who diagnosed Plaintiff as suffering from major depression, assigned a Global Assessment of Functioning score of 51, and opined that Plaintiff's abilities were mildly impaired with moderate limitations in concentration, persistence, and pace. *Id.* The ALJ accorded some weight to the opinion of Dr. Rush, who opined that Plaintiff had mild to moderate mental limitations in her ability to engage in work-related activities. *Id.* The ALJ found that there was insufficient evidence to support Dr. Rush's opinion that Plaintiff would be absent from work three times a month as a result of her impairments. *Id.* The ALJ concluded that her RFC assessment was supported by the objective medical record as a whole, Plaintiff's response to treatment, Plaintiff's activities of daily living, the DDS physicians' opinions, and the opinion of Dr. Rush to the extent it was credited. *Id.* at 23.

### III.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB or SSI. These steps are:

> 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));
>
> 2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));
>
> 3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));
>
> 4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other

> factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.     STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Social Security Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole,* 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)) (citations omitted).

-6-

**V.     ANALYSIS**

  **A.     Step Three of the Sequential Evaluation**

Plaintiff argues that remand is required because the ALJ failed to conduct a meaningful review of Plaintiff's systemic lupus erythematosus ("SLE") in relation to Listing 14.02. ECF Dkt. #13 at 15-16. Defendant contends that the ALJ reasonably evaluated Plaintiff's condition under Listing 14.09, the listing for inflammatory arthritis. ECF Dkt. #15 at 4.

At Step Three of the sequential evaluation, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing. 20 C.F.R. § 404.1520(d). A claimant who meets the requirements of a listing will be considered disabled and entitled to benefits. 20 C.F.R. § 404.1520(d); *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). The Sixth Circuit has held that "[a]n [ALJ] must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." *Reynolds*, 424 F. App'x at 415 (citing *Lawson v. Comm'r of Soc. Sec.,* 192 F. App'x 521, 529 (6th Cir. 2006)). The ALJ must discuss his or her Step Three findings in a manner that will permit meaningful judicial review. *Reynolds*, 424 F. App'x at 414; *Hunter v. Astrue*, No. 1:09CV2790, 2011 WL 6440762 (N.D. Ohio Dec. 20, 2011).

The relevant regulations require the ALJ to find a claimant disabled if he or she meets a listing, yet the regulations do not require the ALJ to address every listing. *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). The ALJ need not address listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ. *Id.* However, if the record raises a substantial question as to whether the claimant could qualify as disabled under a listing, the ALJ should discuss that listing. *Id.* (*citing Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)).

Defendant argues that the ALJ evaluated Plaintiff's lupus and arthritis under Listing 14.09, the listing for inflammatory arthritis, because it was more consistent with Plaintiff's treatment record. ECF Dkt. #15 at 5. Continuing, Defendant also argues that Plaintiff was never diagnosed with a specific type of lupus. *Id.* Based on the above arguments, Defendant contends that the ALJ

-7-

was not required to discuss Listing 14.02 because Plaintiff was never diagnosed with the specific condition, citing *Sheeks* in support of her position. *Id.*

In *Sheeks*, the Sixth Circuit stated, "the ALJ need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Sheeks,* 544 F. App'x at 640. This quote from *Sheeks*, expressly cited by Defendant, does not necessarily justify the ALJ's failure to discuss Listing 14.02 unless Plaintiff clearly did not meet the listing, although it is noted that Plaintiff did not raise the listing before the ALJ. In *Sheeks*, the claimant pointed only to his special education classes and his failure to finish high school as evidence that he met the mental-retardation listing. *Id.* at 642. Accordingly, the Sixth Circuit determined that the ALJ did not commit reversible error because a "substantial question about whether a claimant meets a listing requires more than what Sheeks has put forth here, a mere toehold in the record on an essential element of the listing." *Id.*

In the present case, Plaintiff points to more than a mere toehold in the record to support her contention that the ALJ committed reversible error when she failed to consider Listing 14.02. Plaintiff provided numerous citations from the Transcript highlighting impairments that could potentially meet elements of 14.02(A). ECF Dkt. #13 at 18-19. Listing 14.02(A) requires:

14.02 Systemic lupus erythematosus. As described in 14.00D1. With:

A. Involvement of two or more organs/body systems, with:

    1. One of the organs/body systems involved to at least a moderate level of severity; and

    2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

Plaintiff contends that her SLE disturbed more than two of her major organs of bodily systems, specifically, her respiratory system, mental functioning, immunology, and immune system in the form of inflammatory polyarthritis. ECF Dkt. #13 at 18 (internal citations omitted). Further, Plaintiff argues that she exhibited two of the constitutional signs or symptoms of SLE, namely, severe fatigue and involuntary weight loss. *Id.* at 19 (internal citations omitted). Plaintiff contends that because her SLE disturbs two or more of her major organs or bodily systems and two of the constitutional symptoms or signs were present, Plaintiff met both requirements of Listing 14.02(A).

-8-

*Id.* Plaintiff, in her brief, cites to the Transcript to demonstrate that, based on the medical evidence, the ALJ should have considered Listing 14.02 at Step Three of the sequential analysis.

Alternatively, Defendant argues that even if the ALJ should have considered Listing 14.02, Listing 14.09 (one of the listings considered by the ALJ) employs largely the same language and standards as Listing 14.02, and thus the Court should not remand because the ALJ's analysis and her decision would have been the same under Listing 14.02 as the decision under Listing 14.09. ECF Dkt. #15 at 6. Defendant is correct in her assertion as far as Listing 14.09(D) employs largely the same language as Listing 14.02(B). However, Plaintiff agues that her impairments meet Listing 14.02(A), not 14.02(B). 14.02(A) does look similar to 14.09(B), however, 14.02(A) requires SLE as described in Listing 14.00D1, while 14.09(B) requires inflammation or deformity in one or more major peripheral joints. The difference between 14.02(A) and 14.09(B) is that, under 14.02(A), SLE is a "chronic inflammatory disease that can affect *any organ or body system.*" Listing 14.00D1 (emphasis added). Plaintiff is specifically asserting that her SLE affects organs or bodily systems, rather than a peripheral joint. Accordingly, Defendant's argument fails because the ALJ's decision would not necessarily been the same under Listing 14.02 as it was under Listing 14.09.

Finally, Defendant argues that the ALJ discussed Plaintiff's fatigue and weight loss, the two constitutional signs or symptoms Plaintiff argues satisfy Listing 14.02(A), and considered both in the decision. ECF Dkt. #15. The ALJ's only mention of Plaintiff's fatigue and weight loss, and the only instance to which Defendant cites, reads as follows:

> Nor is there evidence of repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one or more of the following at the marked level:
>
> 1. Limitation in activities of daily living.
>
> 2. Limitation in maintaining social functioning.
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, of pace.

Tr. at 15-16. Here, the ALJ made no decision regarding Plaintiff's severe fatigue or weight loss. The ALJ was simply indicating that there was no evidence of repeated manifestation of inflammatory arthritis with at least two constitutional symptoms or signs under the framework of

Listing 14.09. The ALJ made no indication that Plaintiff did not suffer from severe fatigue or involuntary weight loss, but rather determined that Plaintiff did not suffer from repeated manifestations of inflammatory arthritis. Accordingly, Defendant's argument fails.

The ALJ failed to properly consider Listing 14.02 when conducting Step Three of the sequential analysis. The ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence. *See Cole,* 661 F.3d at 937. Accordingly, the undersigned recommends that the instant case be remanded. The undersigned notes that this Report and Recommendation is not making a recommendation as to whether Plaintiff's impairments meet or equal the Listing 14.02 criteria. If after review the ALJ determines that Plaintiff's impairments do not meet the Listing 14.02 criteria, the ALJ must provide sufficient reasoning in support of making such a determination.

### B. Weight of the Opinion of the State Agency Physician

Plaintiff argues the ALJ failed to discuss or assign weight to the opinion of Dr. McCloud, a state agency physician. ECF Dkt. #13 at 22. Plaintiff cites 20 C.F.R. §§ 416.927(e)(2) and 416.927(e)(2)(ii) in support of her contentions that an ALJ must consider the findings of state agency physicians and that an ALJ must explain the weight given to the opinion of a state agency physician unless a treating physician's opinion has been accorded controlling weight, respectively. *Id.* at 22. Further, Plaintiff cites substantial case law supporting the assertion that when the opinion of a state agency physician contradicts the ALJ's RFC finding, the ALJ must explain why he or she did not include that source's restriction in the determination of a claimant's RFC. ECF Dkt. #13 at 23.

Defendant contends that the ALJ was aware of Dr. McCloud's opinion and considered the opinion, but the ALJ mistakenly referred to Dr. McCould's opinion as Exhibit 3F instead of Exhibit 3A (in the Transcript, Dr. McCloud's opinion is actually located in Exhibit 1A; Tr. at 66-67). ECF Dkt. #15 at 9. Continuing, Defendant argues that the ALJ specifically discussed Dr. McCloud's opinions, and that the discussion was sufficiently clear. *Id.* In her reply brief, Plaintiff did not respond to Defendant's contention that the ALJ discussed the opinion of Dr. McCloud. ECF Dkt. #17.

The undersigned recommends that the Court find that the issue of whether the ALJ discussed or assigned specific weight to the opinion of Dr. McCloud be rendered moot in accordance with the remand of this case. On remand, the ALJ will have the opportunity to consider Dr. McCloud's opinion in accordance with all agency rules and regulations.

### C. ASSESSMENT OF PLAINTIFF'S RFC

The undersigned recommends that the Court decline to address the errors alleged by Plaintiff relating to the ALJ's RFC determination because the ALJ's analysis of Plaintiff's impairments upon remand may impact her findings regarding Plaintiff's RFC. *See May v. Astrue*, No. 4:10CV1533, 2011 WL 3490186 (N.D. Ohio June 1, 2010) (declining to address plaintiff's remaining arguments since remand was already required because the ALJ failed to analyze the plaintiff's physical condition in relation to the listed impairments under Step Three); *see also Smith v. Comm'r of Soc. Sec.*, No. 1:12CV2062, 2013 WL 3337405 at *10 (N.D. Ohio, July 2, 2013) (declining to address assertion concerning ALJ violation of the treating physician rule when the court remanded for the effect medical expert testimony had on ALJ's Step Three determination); *Trent v. Astrue*, Case No. 1:09CV2680, 2011 WL 841538 (N.D. Ohio March 8, 2011) (declining to address claimant's remaining assertion of error because remand was already required and the ALJ's application of the treating physician rule on remand may impact his findings under the sequential disability evaluation).

### VI. CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court REVERSE the ALJ's decision and REMAND Plaintiff's case for reconsideration and proper analysis of Plaintiff's impairments under Listing 14.02.

DATE: July 20, 2015          */s/George J. Limbert*
                              GEORGE J. LIMBERT
                              UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).